UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DEDICATED NURSING ASSOCIATES,
INC.,

              **Plaintiff,**

           v.

BUCKEYE FOREST AT AKRON LLC,
*et al.*,

              **Defendants.**

              **Civil Action 2:25-cv-236**
              **Magistrate Judge Chelsey M. Vascura**

## OPINION AND ORDER

This matter is before the Court on a Motion for Judgment on the Pleadings (ECF No. 26) filed by Buckeye Forest at Akron LLC; Buckeye Forest at Bellefontaine LLC; Buckeye Forest at Cleveland LLC; Buckeye Forest at Greenville LLC; Buckeye Forest at Madeira LLC; Buckeye Forest at Mayfield Heights LLC; Buckeye Forest at North Olmsted LLC; Buckeye Forest at Waterville LLC; Buckeye Forest at Fairfield LLC; and Med Healthcare Partners LLC ("Defendant Med Healthcare") (collectively, "Defendants"). Dedicated Nursing Associates, Inc. ("Plaintiff") has filed a Response in Opposition (ECF No. 36), and Defendants have filed a Reply (ECF No. 40). For the reasons that follow, Defendants' Motion (ECF No. 26) is **GRANTED**.

### I.      FACTS AND PROCEDURAL HISTORY

**A.    Plaintiff's Staffing Contracts and the Pennsylvania Lawsuit**

Plaintiff is a Pennsylvania corporation that provides medical staffing services to nursing facilities. (Compl. ¶¶ 1, 14, ECF No. 1.) Plaintiff entered separate staffing contracts with nine

non-party limited liability companies ("the Predecessor Entities"),[1] each of which operated a skilled nursing facility in Ohio (collectively, "the Nursing Facilities"). (*Id*. at ¶ 19.) Plaintiff alleges that Boulder Operations Holdings, LLC ("Boulder") owned all nine Predecessor Entities. (*Id*. at ¶ 18.)

Plaintiff further alleges that the Predecessor Entities breached the staffing contracts by failing to pay for Plaintiff's staffing services. (*Id*. at ¶ 20.) Consequently, on November 1, 2019, Plaintiff sued the Predecessor Entities and Boulder in a Pennsylvania state court for claims related to those breaches ("the Pennsylvania Action"). (*Id*. at ¶ 21.)

## B.      The Predecessor Entities' Asset Sale

Nearly two years after Plaintiff initiated the Pennsylvania Action,[2] and while that action was still pending, the Predecessor Entities entered an Operations Transfer and Surrender Agreement ("OTSA") with nine of the ten Defendants in this case ("the Transferee Defendants").[3] (*Id*. at ¶ 23; Answer ¶ 23, ECF No. 20; Answer Ex. A, ECF No. 20–1, at PageID #271, 299.) Under the OTSA, the Predecessor Entities sold certain assets to the Transferee Defendants in exchange for $145 million ("the Asset Sale"). (Compl. ¶ 23, ECF No. 1; Answer ¶ 23, ECF No. 20; Answer Ex. A, ECF No. 20–1, at PageID # 272, 299.)

---

[1] The Predecessor Entities are: (1) Akron Healthcare LLC; (2) Bellefontaine Healthcare LLC; (3) Euclid Beach Healthcare LLC; (4) Greenville Healthcare LLC; (5) North Olmsted Healthcare LLC; (6) Madeira Healthcare LLC; (7) Mayfield Heights Healthcare LLC; (8) Waterville Healthcare LLC; and (9) Woodridge Healthcare LLC. (Compl. ¶ 17, ECF No. 1.)

[2] The OTSA was executed on August 17, 2021. (Answer Ex. A, ECF No 20–1, at PageID # 271.)

[3] Transferee Defendants are: (1) Buckeye Forest at Akron LLC; (2) Buckeye Forest at Bellefontaine LLC; (3) Buckeye Forest at Cleveland LLC; (4) Buckeye Forest at Greenville LLC; (5) Buckeye Forest at Madeira LLC; (6) Buckeye Forest at Mayfield Heights LLC; (7) Buckeye Forest at North Olmsted LLC; (8) Buckeye Forest at Waterville LLC; and (9) Buckeye Forest at Fairfield LLC.

Section 2.4 of the OTSA, titled "Assumption of Liabilities," provided that the Transferee Defendants agreed to assume liabilities and obligations related to the assets they purchased from the Predecessor Entities, "but only to the extent such liabilities and obligations relate to the period after the Effective Time." (Answer Ex. A, ECF No 20–1, at PageID #275.) The Effective Time was defined as 12:01 am on the closing date. (Defs.' Mot. J. Pleadings Ex. C, ECF No. 26–3, at PageID #693.)

Plaintiff alleges that after the Asset Sale, the same nine Nursing Facilities continued operating under the Transferee Defendants' ownership. (Compl. ¶ 24, ECF No. 1.) Plaintiff further alleges that a tenth Defendant, Defendant Med Healthcare, owns the Transferee Defendants. (*Id*. at ¶ 16.) Plaintiff was not notified about the Asset Sale when it occurred. (*Id*. at ¶ 25.)

## C.      The Predecessor Entities' Chapter 7 Bankruptcy

In August 2022—nearly one year after the OTSA was executed—Plaintiff was notified that Boulder and the Predecessor Entities had filed voluntary Chapter 7 bankruptcy petitions in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Action").[4] (*Id*. at ¶ 22.) Plaintiff filed proofs of claim in the Bankruptcy Action. *Claims Register*, No. 22, 22-

---

[4] The nine Predecessor Entities and Boulder filed ten separate voluntary bankruptcy petitions in the United States Bankruptcy Court for the District of Delaware on July 29, 2022, but the cases were consolidated and jointly administered in one action. *See* Order Granting Motion for Joint Administration, *In re Boulder Operations Holdings LLC*, No. 22-10664-CTG (Bankr. D. Del. Sept. 12, 2022), ECF No. 15.

10664-CTG, Boulder Operations Holdings LLC (Bank. D. Del. Mar. 22, 2023) ECF No. 22-1.[5] Although Plaintiff was listed as an unsecured creditor in the Bankruptcy Action, it ultimately received no distribution. *See* Order Approving Final Report and Distribution, *In re Boulder Operations Holdings LLC*, No. 22-10664-CTG (Bankr. D. Del. Jan. 15, 2026), ECF No. 154; Trustees' Final Report, *In re Boulder Operations Holdings LLC*, No. 22-10664-CTG (Bankr. D. Del. Dec. 15, 2025), ECF No. 134.

**D.      The Pennsylvania Removal**

After Plaintiff learned about the Predecessor Entities' Asset Sale and the Bankruptcy Action, it amended its complaint in the Pennsylvania Action to add successor-liability and fraud claims against Defendant Med Healthcare and the Transferee Defendants. (*Id*. at ¶ 26.) The case was then removed to the United States District Court for the Western District of Pennsylvania. Notice of Removal, *Dedicated Nursing Assocs., Inc. v. Buckeye Forest at Akron LLC et al.*, No. 2:23-cv-01597 (W.D. Pa. Sept. 5, 2023), ECF No. 1.

Following removal, the Transferee Defendants moved to dismiss for lack of personal jurisdiction, arguing that they did not have sufficient jurisdictional contacts with Pennsylvania, and that the Predecessor Entities' Pennsylvania contacts could not be imputed to them under successor-liability principles. *Dedicated Nursing Assocs., Inc. v. Buckeye Forest at Akron LLC*, No. 2:23-CV-01597-JFC-CBB, 2024 WL 5046122, at *8 (W.D. Pa. Oct. 4, 2024), *adopted and aff'd*, No. CV 23-1597, 2024 WL 5146147 (W.D. Pa. Dec. 17, 2024). The Court agreed and held

---

[5] Defendants attached to their Motion copies of the proofs of claim that Plaintiff filed against eight of the nine Predecessor Entities in the Bankruptcy Action. (Defs.' Mot. J. Pleadings Ex. I, ECF No. 26–9). The Court has determined that they are identical to documents that are publicly available on claims registers in the Bankruptcy Action. The Court also takes judicial note of the proof of claim that Plaintiff filed against the ninth Transferee Defendant, Greenville Healthcare LLC. *See Claims Register*, No. 11, 22-10670-CTG, Greenville Healthcare LLC (Bank. D. Del. Mar. 22, 2023).

that, under either Pennsylvania or Delaware law, Plaintiff had not plausibly alleged a *de facto* merger sufficient to establish personal jurisdiction over the Transferee Defendants. *Id*. at \*10. The Court granted the Transferee Defendants' motion to dismiss without prejudice.

**E.      The Present Action**

Plaintiff then filed this action seeking a declaratory judgment that the Transferee Defendants assumed the Predecessor Entities' liabilities, including the Predecessor Entities' liability for breaching their staffing contracts with Plaintiff (Count One). (Compl. ¶¶ 90–99, ECF No. 1.) Plaintiff also asserted claims for breach of contract against the Transferee Defendants (Count Two) and unjust enrichment against the Transferee Defendants and Defendant Med Healthcare (Counts Three and Four). (*Id*. at ¶¶100–105, 106–123.)

Defendants answered the Complaint and moved for judgment on the pleadings. (Answer, ECF No. 20; Defs.' Mot. J. Pleadings, ECF No. 26.) That Motion is ripe for review. (ECF Nos. 36, 40.)

**II.      LEGAL STANDARD**

Under Rule 12(c) of the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings any time after the pleadings are closed but early enough not to delay trial. Fed. R .Civ. P. 12(c). "Courts apply the same analysis to motions for judgment on the pleadings under Rule 12(c) as they apply to motions to dismiss under Fed. R. Civ. P. 12(b)(6)." *McGath v. Hamilton Local Sch. Dist.*, 848 F. Supp. 2d 831, 836 (S.D. Ohio 2012) (citing *Warrior Sports, Inc. v. National Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010)). Under Rule 12(b)(6), "[a] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

5

(cleaned up). But Courts are not required to accept as true legal conclusions or unwarranted factual inferences. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581–82 (6th Cir. 2007).

When ruling on a Rule 12(c) motion, the Court's review is generally limited to the pleadings themselves. *See, e.g., Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011). If the Court does consider material outside the pleadings, the motion must be treated as one for summary judgment under Federal Rule of Civil Procedure 56 and the parties must be provided an opportunity to present all material pertinent to the motion. *Id.* That said, the Court may consider "exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Id.*

### III.    ANALYSIS

**A.    Choice of Law**

A federal court sitting in diversity applies the choice of law principles of the forum state. *Wiggins v. Bank of Am., N. Am.*, 488 F. Supp. 3d 611, 634 (S.D. Ohio 2020); *Baker Hughes Inc. v. S&S Chem., LLC*, 836 F.3d 554, 560 (6th Cir. 2016). In Ohio, a conflict is required before engaging in the choice of law discussion. *Kirby Devs. LLC v. XPO Glob. Forwarding, Inc.*, No. 2:18-CV-500, 2021 WL 4125457, at *12 (S.D. Ohio Sept. 9, 2021) (citing *Akro-Plastics v. Drake Indus.*, 115 Ohio App. 3d 221, 224 (Ohio Ct. App. 1996)). The party seeking application of a foreign law bears the burden of establishing a conflict. *Id.* If that party fails to sustain that burden, Ohio law applies. *Id.* (citing *Gouge v. BAX Global, Inc.*, 252 F. Supp. 2d 509, 521 (N.D. Ohio 2003)).

Defendants ask the Court to apply Delaware law. (Defs.' Mot. J. Pleadings 10, ECF No. 26.) Plaintiff contends that Pennsylvania law governs. (Pl.'s Resp. in Opp'n 6, ECF No. 36.) But

both parties agree that successor-liability law is materially the same in Ohio, Delaware, and Pennsylvania. (Defs.' Mot. J. Pleadings 10–11, ECF No. 26; Pl.'s Resp. in Opp'n 6, ECF No. 36.) The Court agrees. Moreover, the Court finds no substantial conflict in the law of breach of contract and unjust enrichment in all three states. Therefore, the Court applies Ohio law.

**B.      Successor Liability of the Transferee Defendants**

In Count One, Plaintiff seeks a declaration that the Transferee Defendants assumed the Predecessor Entities' liabilities, including their obligations under the staffing agreements. Defendants correctly contend that Plaintiff has not adequately alleged successor liability. (Defs.' Mot. J. Pleadings 9–15, ECF No. 26.)

Ohio follows the traditional rule of successor liability: although a successor in a merger ordinarily assumes its predecessor's liabilities, a purchaser of assets for cash does not. *Welco Indus., Inc. v. Applied Cos.*, 67 Ohio St. 3d 344, 346–47 (1993). This rule reflects that asset sales are an important means of raising capital to satisfy corporate debts, and the automatic imposition of successor liability would chill the market for such transactions. *See e.g., id*. at 348–49.

There are, however, four "[e]qually well recognized . . . exceptions to this general rule." *Id.* at 347 (*citing Flaugher v. Cone Automatic Machine Co.*, 30 Ohio St. 3d 60, 62 (1987)). An asset purchaser may be held liable as a successor when:

(1)      the buyer expressly or impliedly agrees to assume such liability;

(2)      the transaction amounts to a *de facto* consolidation or merger;

(3)      the buyer corporation is merely a continuation of the seller corporation; or

(4)      the transaction is entered into fraudulently for the purpose of escaping liability.

*Id.* (quoting *Flaugher*, 30 Ohio St. 3d at 62).

7

Plaintiff relies on the *de facto* merger, mere continuation, and fraudulent transaction exceptions. (Pl.'s Resp. in Opp'n 19–16, ECF No. 36.) The Court is not persuaded that the Complaint adequately pleads any of them.

## 1. *De facto* Merger

Plaintiff does not adequately plead successor liability under the *de facto* merger exception. A *de facto* merger is a transaction that results in the dissolution of a predecessor corporation and its total absorption into the successor. *Flaugher,* 30 Ohio St. 3d at 62. It constitutes a "merger in fact without an official declaration of such." *Welco*, 67 Ohio St. 3d at 349.

The Ohio Supreme Court has described four "hallmarks" of a *de facto* merger:

(1) the continuation of the previous business activity and corporate personnel,

(2) a continuity of shareholders resulting from a sale of assets in exchange for stock,

(3) the immediate or rapid dissolution of the predecessor corporation, and

(4) the assumption by the purchasing corporation of all liabilities and obligations ordinarily necessary to continue the predecessor's business operations.

*Id.* No single factor is determinative, and a *de facto* merger may be found even if only some factors are present. *Garrett Day LLC v. Int'l Paper Co.*, No. 3:15-CV-36, 2016 WL 882104, at *9 (S.D. Ohio Mar. 1, 2016) (citing *Cytec Indus., Inc. v. B.F. Goodrich Co.,* 196 F. Supp.2d 644, 658 (S.D. Ohio 2002)). Nevertheless, the Ohio Supreme Court has suggested that the second hallmark—a continuity of ownership through an asset-for-stock exchange—is "arguably the *sine qua non* of a de facto merger." *Id*. (quoting *H.C.F., Inc. v. Ohio Bureau of Workers' Comp.,* 80 Ohio St. 3d 642, 648 (1998). *See also State ex rel. Health Care Facilities, Inc. v. Ohio Bureau of Workers' Comp.*, 80 Ohio St. 3d 642, 648, (1998) (noting the significance of no assets-for-stock

exchange, which is "arguably the *sine qua non* of a de facto merger") (citing *Welco,* 67 Ohio St. 3d at 349).

Here, Plaintiff alleges that the Transferee Defendants "maintained the same business purpose and activity . . .  kept certain key personnel as employees and management, and operated from the same location." (Compl. ¶ 95, ECF No. 1.) At best, these conclusory allegations suggest a continuity of business operations under the first factor. But Plaintiff has not alleged that there was a continuation of business activity and previous *corporate* personnel. And retention of certain employees or managers is not equivalent to continuing corporate leadership. *See Garrett Day*, 2016 WL 882104, at *9–10 (finding allegations that successor operated at the same site using the same employees was insufficient; plaintiff did not allege a continuation of corporate personnel). *Hobart Corp. v. Dayton Power & Light Co*., No. 3:13-CV-115, 2014 WL 631518, at *4 (S.D. Ohio Feb. 18, 2014) (finding allegations inadequate where "the Amended Complaint contain[ed] no allegations that corporate personnel or shareholders remained the same").

Nor does Plaintiff adequately allege the third factor—that the Predecessor Entities immediately or rapidly dissolved after the Asset Sale. Plaintiff alleges that approximately two years after the Predecessor Entities breached the staffing agreements, and approximately one year after the OTSA was executed, the Predecessor Entities filed for bankruptcy under Chapter 7. (Compl. ¶¶ 21, 22, 23, 94, ECF No. 1.) A Chapter 7 bankruptcy is not, however, the same as a dissolution. The former involves the administration and liquidation of an entity's assets, whereas dissolution results in the termination of an entity's existence. *In re Oregon Homes, LLC,*, No. 13-33349, 2014 WL 4794861, at *4 (Bankr. N.D. Ohio Sept. 25, 2014) ("Liquidation through Chapter 7 does not effect dissolution of the company.") *See also*, *Tech. Express, Inc. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.,* 384 F.3d 108, 126 (3d

9

Cir.2004) (explaining that "[d]issolution . . . is not an objective that can be attained in bankruptcy"); *In re CVA Gen. Contractors, Inc.,* 267 B.R. 773, 781 n. 10 (Bankr. W.D. Tex. 2001) (finding that a Chapter 7 liquidation of a corporation does not effectuate the dissolution of that corporation); *In re E. End Dev., LLC,* 491 B.R. 633, 640 (Bankr. E.D.N.Y. 2013) (stating that "[t]he filing of a bankruptcy petition is not equivalent to . . . dissolution); 6 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 727.01[3] (16th ed. rev. 2016) ("After liquidation, any dissolution of the corporation or partnership that the parties desire must be effectuated under state law, since the Code does not provide for dissolution of corporations or partnerships.").

That said, a handful of Ohio's lower appellate courts have held that continued corporate existence does not defeat this third *de facto* merger factor unless "the transferor retains sufficient assets to satisfy the claims of its creditors." *Pottschmidt v. Klosterman*, 169 Ohio App. 3d 824, 835 (Ohio Ct. App. 2006) (quoting *Crislip v. Twentieth Century Heating & Ventilating Co.*, No. 13721, 1989 WL 11795, at *4 (Ohio Ct. App. Feb. 15, 1989)). Even so, filings in the Bankruptcy Action show that the Predecessor Entities retained substantial assets—approximately $940,000. The Trustee used those funds to satisfy at least some of the Predecessor Entities' creditors' claims in January 2026. *See* Order Approving Final Report and Distribution, *In re Boulder Operations Holdings LLC*, No. 22-10664-CTG (Bankr. D. Del. Jan. 15, 2026), ECF No. 154; Trustees' Final Report, *In re Boulder Operations Holdings LLC*, No. 22-10664-CTG (Bankr. D. Del. Dec. 15, 2025), ECF No. 134. Under these circumstances, Plaintiff has not plausibly pleaded rapid dissolution. *See CRS Site RD/RA Grp. v. Acme-Cleveland Corp.*, No. 1:13 CV 01516, 2014 WL 12591695, at *12 (N.D. Ohio Dec. 1, 2014) (finding no *de facto* merger where no seller corporation dissolved after an asset sale including a seller corporation "whose bankruptcy continued for eight years after the asset transaction").

10

In any event, even if the Predecessor Entities' insolvencies could be construed as rapid dissolutions, Plaintiff does not adequately plead the second, and arguably most critical factor—continuity of ownership resulting from a sale of assets for stock. Specifically, Plaintiff does not allege that the Transferee Defendants issued membership interests to the Predecessor Entities in exchange for their assets, which would have been the equivalent to an assets-for-stock exchange. Plaintiff instead alleges that the Transferee Defendants purchased Predecessor Entities' assets for $145 million. (Compl. ¶ 23, ECF No. 1.) Plaintiff further alleges that the Predecessor Entities are owned by Boulder and that the Transferee Defendants are owned by Defendant Med Healthcare. (*Id*. at ¶¶ 16, 18.) This suggests that continuity of ownership is lacking rather than present.

Plaintiff has also failed to adequately allege the fourth factor. To be sure, Plaintiff alleges that the Transferee Defendants "assumed all liabilities and obligations necessary to continue the Predecessor Entities' business operations." (Compl. ¶ 96, ECF No. 1.) But this conclusory allegation is not supported by any factual allegations. Moreover, the OTSA contradicts that contention. Section 2.4(a) of the OTSA provides that the Transferee Defendants assumed liabilities related only to the assets that were purchased. (ECF No. 20–1 at 5.) And Section 2.4(b) makes it clear that the Transferee Defendants only assumed asset-related liabilities that arose after the Effective Date, and that liabilities incurred before that remained with the Predecessor Entities. Therefore, Plaintiff's pleadings are insufficient. *See Health Carousel Travel Network, LLC v. Alecto Healthcare Servs. Wheeling, LLC*, 2024-Ohio-4599, ¶ 31, 252 N.E. 3d 1254, 1262–63 (finding fourth factor not met where asset-purchase agreement showed that transferee disclaimed assumption of any liability not set forth in agreement, including debts the transferor owed for previous business operations).

11

In short, Plaintiff does not adequately allege that the Asset Sale constituted a *de facto* merger for successor liability. Plaintiff indicates that discovery would allow it to identify additional facts to support its *de facto* merger theory. (Pl.'s Resp. in Opp'n 12, ECF No. 36.) But a sufficient pleading is prerequisite to discovery. *Hobart*, 2014 WL 631518, at *4 (citing *Iqbal*, 556 U.S. at 686 ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery.") and *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011) ("[P]laintiff must allege specific facts . . . even if those facts are only within the head or hands of the defendants. The plaintiff may not use the discovery process to obtain these facts after filing suit.").

### 2.       Mere Continuation

Plaintiff also fails to adequately plead successor liability under the mere-continuation exception. Mere continuation occurs when "one corporation sells its assets to another corporation with the same people owning both corporations." *Welco*, 67 Ohio St. 3d at 350 (citation omitted). "Thus, the acquiring corporation is just a new hat for, or reincarnation of, the acquired corporation." *Id*. Notably, "it is not enough to show that the purported successor has the same physical plant, officers, employees and product line as the purported predecessor." *Mickowski v. Visi-Trak Worldwide, LLC*, 415 F3d 501, 510 (6th Cir. 2005) (citation omitted). "[T]he key element is identity of ownership: a common identity of stockholders, directors, and stock." *Id.* at 515. *See also*, *WRK Rarities, LLC v. United States*, 165 F. Supp. 3d 631, 637 (N.D. Ohio 2016) (collecting cases) (explaining that "[c]ommon ownership of the companies is critical to this analysis").

Again, Plaintiff makes conclusory allegations that suggest only continued business operations: same business purpose and activities, some same retained personnel, and same

12

locations. (Compl. ¶ 95, ECF No. 1.) But Plaintiff does not allege any facts indicating that the Predecessor Entities and Transferees Defendants share common ownership. To the contrary, and as explained above, Plaintiff alleges that the Predecessor Entities are owned by Boulder and that the Transferee Defendants are owned by Defendant Med Healthcare. (Compl. ¶¶ 16, 18, ECF No. 1.) And Plaintiff does not allege that Boulder and Defendant Med Healthcare are owned by the same person or entity.

Publicly available documents also undermine any inference of common ownership. Filings in the Bankruptcy Action show that Boulder was the sole member of each of the Predecessor Entities.[6] *See*, *e.g*., Voluntary Petition, *In re Akron Healthcare LLC,* No. 22-10666-CTG (Bankr. D. Del. July 29, 2022), ECF No. 1. But filings in this action show that the members of the Transferee Defendants are all individuals who reside in New York, none of whom are Boulder. (ECF No. 25.)

Because Plaintiff does not plead common ownership, and other public filings undermine such an inference, Plaintiff has failed to adequately allege successor liability based on the mere-continuation exception. *Mickowski,* 415 F.3d 509–10 (affirming summary judgment on a successor liability theory because there was no common ownership between the at issue companies); *Polytec Internacional, S.A. v. Artco Glob. Grp., LLC*, No. 2:23-CV-480, 2023 WL 8600575, at *4 (S.D. Ohio Sept. 6, 2023) (granting motion to dismiss where Plaintiff failed to allege the "key element" of Ohio's mere continuation test: common identity of stockholders, directors, and stock).

---

[6] Boulders' sole member is Boulder FG Holdings LLC. Voluntary Petition, *In re Boulder Operations Holdings LLC*, No. 22-10664-CTG (Bankr. D. Del. July 29, 2022), ECF No. 1.

13

### 3.    Fraudulent Transaction

Plaintiff has also failed to adequately plead that the Asset Sale was entered into fraudulently for the purpose of escaping liability. The Ohio Supreme Court has identified two "indicia of fraud" for this exception to successor liability: (1) inadequate consideration; and (2) lack of good faith. *Welco*, 67 Ohio St. 3d at 349 (*citing Turner v. Bituminous Cas. Co.*, 397 Mich. 406, 437 (1976) (Coleman, J., dissenting) ("Indicia of fraud may be inadequate consideration paid to the transferor, and/or lack of good faith.")).

Plaintiff alleges that the Transferee Defendants purchased the Predecessor Entities assets for $145 million. (Comp. ¶ 23, ECF No. 1.) Plaintiff does not allege, and it is not patently obvious, that this amount was inadequate. *Cf. WRK Rarities, LLC v. United States*, 165 F. Supp. 3d 631, 638 (N.D. Ohio 2016) (finding consideration inadequate where there was no consideration offered for assets).

As for a lack of good faith, Plaintiff alleges that Boulder and/or the Predecessor Entities: (1) failed to notify Plaintiff about the Asset Sale when it occurred despite a contractual obligation to do so, (2) sold all their assets after Plaintiff sued them in the Pennsylvania Action, and (3) filed for bankruptcy shortly after the Asset Sale. (Compl. ¶ 25, 21, 22, 23, ECF No. 1.) These allegations, however, pertain to Boulder and the Predecessor Entities, who are not parties in this action. To allege successor liability against the Transferee Defendants, Plaintiff must allege that the Transferee Defendants acted without good faith or that they paid less than equivalent value for the assets. *See Welco*, 67 Ohio St. 3d at 349 (finding fraudulent transaction exception to successor liability inapplicable without indication that transferee paid for assets with a lack of good faith—outside of an arm's-length negotiation—or for inadequate consideration). Those allegations must be supported by facts about the Transferee Defendants. Plaintiff pleads no such facts. Therefore, it has failed to adequately plead this successor-liability exception.

14

Likewise, when responding to Defendants' Motion, Plaintiff relies, at least in part, on Ohio's Uniform Fraudulent Transfers Act ("UFTA") Ohio Revised Code Chapter 1336. (Pl.'s Resp. in Opp'n 14–16, ECF No. 36.) Under that statute, a creditor may seek to unwind a transfer if a debtor made a transfer or incurred an obligation with either actual or constructive intent to defraud the creditor. O.R.C. §§ 1336.04 (A) (1); (A)(2). Plaintiff did not, however, allege a claim under UFTA against the debtors (*i.e.*, the Predecessor Entities) or seek to unwind the Asset Sale in the Complaint.[7]

Because Plaintiff has failed to adequately allege this, or any other exception to the general rule of successor-liability, Defendants' Motion for Judgment on the Pleadings as to Count One has merit.

## B.      Breach of Contract (by the Transferee Defendants)

In Count Two, Plaintiff asserts a breach of contract against the Transferee Defendants. "It is generally recognized that a contract is binding only upon the parties to that contract." *TRINOVA Corp. v. Pilkington Bros., P.L.C.*, 70 Ohio St. 3d 271, 275 (1994). *See also HREF Senior Worthington LLC v. Conroe WM LLC*, No. CV 2024-1148-MTZ, 2026 WL 84352, at *19 (Del. Ch. Jan. 12, 2026) ("It is well established in Delaware that only parties to a contract may be

---

[7] Of additional note, Plaintiff filed proofs of claims in the Bankruptcy Action. There, the Trustee had a duty to review all of Boulder's and the Predecessor Entities' transactions for at least the two years prior to their July 29, 2022 Chapter 7 bankruptcy petitions and to "claw back" for the estate any assets that were fraudulently transferred during that period. Although the Predecessor Entities' August 17, 2021 Asset Sale fell squarely within that look-back period, the Trustee opted not to pursue an avoidance action under the Bankruptcy Code. If Plaintiff disagreed with that determination, its remedies in the Bankruptcy Action included asking the Trustee to pursue a fraudulent transfer claim, moving to compel action or replace the Trustee, or objecting to the Trustees' Final Report. But instead of challenging the Trustees' review of the Asset Sale in the Bankruptcy Action, Plaintiff challenges the same transaction by filing suit against different parties here in a different forum. Thus, even if Plaintiff's fraud allegations were more developed, it is unclear if Plaintiff could relitigate this issue.

liable for breach of that particular contract."); *Viso v. Werner*, 369 A.2d 1185, 1187 (1977) (noting that there can be no "recovery on a contract from one who was not a party thereto . . . ").

Plaintiff does not allege that the Transferee Defendants were parties to the staffing contracts. Instead, Plaintiff alleges that it contracted with the Predecessor Entities and that the Transferee Defendants assumed the Predecessor Entities' liabilities under those contracts pursuant to successor liability principles. As explained above, however, Plaintiff has failed to plausibly plead an exception to the general rule of successor liability. Without successor liability, the Transferee Defendants cannot be held liable for breaches of contracts to which they were not parties. Accordingly, Defendants' Motion for Judgment on the Pleadings as to Count Two has merit.

**C.      Unjust Enrichment (the Transferee Defendants and Defendant Med Healthcare)**

In Counts Three and Four, Plaintiff asserts unjust enrichment claims against the Transferee Defendants and Defendant Med Healthcare.

Under Ohio law, unjust enrichment requires: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment . . . ." *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 183 (1984).[8]

---

[8] The elements under Delaware and Pennsylvania law are substantially similar. *See Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010) (setting forth elements of unjust enrichment under Delaware: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law). *See also Liberty Mut. Grp., Inc. v. 700 Pharmacy, LLC*, 270 A.3d 537, 554 (2022) (setting forth elements of unjust enrichment under Pennsylvania law: (1) benefits conferred on a defendant by a plaintiff; (2) appreciation of such benefits by a defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for the defendant to retain the benefit without payment of value).

16

Here, Plaintiff alleges it conferred a benefit when it provided staffing services. But Plaintiff does not allege that it provided those services to Defendants. Instead, Plaintiff alleges that it provided staffing services to the Predecessor Entities before November 1, 2019, and that those services increased the value of the Nursing Facilities that Defendants later purchased. (Compl. ¶¶ 19, 21, 108, 117, ECF No. 1.) Specifically, Plaintiff alleges that the Nursing Facilities would have ceased operating without Plaintiff's services and that Defendants benefited from those continued operations when they acquired the Nursing Facilities in the Asset Sale two or more years later. (*Id*. at ¶¶ 108, 109, 117, 119.)

These allegations are insufficient. First, Plaintiff does not plausibly allege that the Nursing Facilities would have shut down without its staffing services. Plaintiff provides no supporting facts for that assertion. And elsewhere, Plaintiff alleges that the Nursing Facilities continued to operate as usual after the Asset Sale even though Plaintiff was no longer providing staffing services by then. (*Id*. at ¶ 24.) That undercuts the idea that Plaintiff's services were somehow indispensable. (*Id*. at ¶ 24.)

But even accepting Plaintiff's indispensability theory, Plaintiff still does not plausibly allege that it conferred a benefit on Defendants. Plaintiff does not allege how continued operations in 2019 produced a concrete benefit for the asset purchasers two years later. Indeed, if lack of staffing would have caused closures in 2019, Defendants' purchase price for the Asset Sale may have decreased. Correspondingly, if Plaintiff's services enhanced the value of the Nursing Facilities, they may have inflated the price Defendants paid for the Asset Sale, which would constitute a detriment rather than a benefit to Defendants.

Moreover, for unjust enrichment,  is not enough for Plaintiff to allege that it conferred a benefit on Defendants. Plaintiff must also allege that it would be unconscionable for Defendants

17

to keep that benefit. To determine whether it would be unjust for a defendant to retain a benefit, a court must consider whether the plaintiff has a "superior equity" such that it would be "unconscionable for the defendant to retain the benefit." *Barnett v. Kroger Co.*, No. 1:22-CV-544, 2025 WL 712741, at *12 (S.D. Ohio Mar. 5, 2025) (quoting *Longmire v. Danaci*, 155 N.E.3d 1014, 1024 (Ohio Ct. App. 2020) (cleaned up)). Here, Plaintiff has not alleged that the $145 million price that Defendants paid for the Asset Sale failed to account for any value that Plaintiff's services may have added to the Nursing Facilities.

Plaintiff nevertheless notes that courts have recognized circumstances where an unjust enrichment claim may be made "against a noncontracting third-party who benefits from the uncompensated work of one of the parties to a contract." (Pl.'s Resp. in Opp'n 17, ECF No. 36 (quoting *Guardian Tech., Inc. v. Chelm Props., Inc.*, No. 80166, 2002 WL 31087415, at *2 (Ohio Ct. App. 2002)). But the problem is not lack of privity. The problem is a lack of factual allegations about how Plaintiff's 2019 staffing services created tangible, lasting improvements to the Nursing Facilities that increased their value two years later, as might occur with physical upgrades or capital improvements like a new pool or a parking lot.

Plaintiff also argues that under successor liability principles, the Transferee Defendants are liable to it for the Predecessor Entities' unjust enrichment. (Pl.'s Resp. in Opp'n 17, ECF No. 36.) As explained above, however, Plaintiff has not adequately alleged successor liability. In addition, there is no dispute that Plaintiff provided staffing services to the Predecessor Entities pursuant to the staffing contracts. And "a plaintiff may not recover under the theory of unjust enrichment when an express contract covers the same subject." *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 904 (S.D. Ohio 2013).

18

In sum, Plaintiff has not adequately alleged that it conferred a benefit upon the Defendants or that the Defendants unjustly retained any such conferred benefit without pay. Therefore, Defendants' Motion for Judgment on the Pleadings as to Counts Three and Four has merit.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Judgment on the Pleadings (ECF No. 26) is **GRANTED**. Plaintiff's claims for declaratory judgment (Count One), breach of contract (Count Two), and unjust enrichment (Counts Three and Four) are **DISMISSED**. The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE